UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DAVID KANEFSKY, Individually and On Behalf of All Others Similarly Situated,<br><br>                                    Plaintiff,<br><br>              v.<br><br>HONEYWELL INTERNATIONAL INC., DARIUS ADAMCZYK, and THOMAS A. SZLOSEK,<br><br>                                    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No.<br><br><br>CLASS ACTION COMPLAINT<br><br><br>JURY TRIAL DEMANDED |

Plaintiff David Kanefsky ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Honeywell International Inc. ("Honeywell" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet.  Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.    This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased or otherwise acquired Honeywell securities between February 9, 2018 through October 19, 2018, both dates inclusive (the "Class Period"),

seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.      Honeywell is a multinational conglomerate that makes a variety of commercial and consumer products, engineering services, and aerospace systems.  Honeywell was incorporated in Delaware in 1985, and its common stock trades on the New York Stock Exchange ("NYSE") under the symbol "HON".

3.      Honeywell previously owned Bendix Friction Materials ("Bendix"), a manufacturer of automotive, truck and industrial brakes.  Despite known health hazards, Bendix used asbestos in its brake- and clutch-pad products until 2001.  Honeywell sold Bendix in 2014.

4.      Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Honeywell's Bendix asbestos-related liability was greater than initially reported; (ii) the Company maintained improper accounting practices in connection with its Bendix asbestos-related liability; and (iii) as a result, Honeywell's public statements were materially false and misleading at all relevant times.

5.      On August 23, 2018, Honeywell disclosed that "the Company's Bendix asbestos-related liability is estimated to be $1,693 million as of June 30, 2018.  This is $1,083 million higher than the Company's prior estimation."  Honeywell further advised investors that "Bendix asbestos-related insurance assets are estimated to be $187 million as of June 30, 2018, which is $65 million higher than the Company's prior estimate."

6.     Then, on October 19, 2018, Honeywell filed a quarterly report with the SEC for the quarter ended September 30, 2018.  In its quarterly report, Honeywell advised investors that the SEC's Division of Corporate Finance had reviewed Honeywell's prior accounting for liability for unasserted Bendix-related asbestos claims" and that "[o]n September 13, 2018, following completion of Corporation Finance's review, the SEC Division of Enforcement advised that it has opened an investigation related to this matter.

7.     On Honeywell's stock price fell $1.72 per share, or 1.11%, to close at $153.47 per share on October 19, 2018.  Over the following three trading sessions, Honeywell's stock price fell by an additional $7.87, or 5.3%, to close at $140.72 per share on October 24, 2018.

8.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

9.     The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

10.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and Section 27 of the Exchange Act.

11.    Venue is proper in this Judicial District pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1391(b) as Honeywell's principal executive offices are located within this Judicial District.

12.    In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce,

including but not limited to, the United States mail, interstate telephone communications and the facilities of a national securities exchange.

## PARTIES

13.    Plaintiff, as set forth in the attached Certification, acquired Honeywell securities at artificially inflated prices during the Class Period and were damaged upon the revelation of the alleged corrective disclosures.

14.    Defendant Honeywell is incorporated in Delaware, with principal executive offices located at 115 Tabor Road, Morris Plains, New Jersey 07950. Honeywell's common stock is traded on the NYSE, under the symbol "HON".

15.    Defendant Darius Adamczyk ("Adamczyk") has served at all relevant times as the Company's President and CEO and Chairman.

16.    Defendant Thomas A. Szlosek ("Szlosek") has served at all relevant times as the Company's Chief Financial Officer.

17.    The Defendants referenced above in ¶¶ 15-16 are sometimes referred to herein as the "Individual Defendants."

18.    The Individual Defendants possessed the power and authority to control the contents of Honeywell SEC filings, press releases, and other market communications. The Individual Defendants were provided with copies of the Company's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected. Because of their positions with the Company, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations

4

being made were then materially false and misleading. The Individual Defendants are liable for the false statements and omissions pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

19. Honeywell is a multinational conglomerate that makes a variety of commercial and consumer products, engineering services, and aerospace systems.

20. Honeywell previously owned Bendix Friction Materials ("Bendix"), a manufacturer of automotive, truck and industrial brakes. Despite known health hazards, Bendix used asbestos in its brake- and clutch-pad products until 2001. Honeywell sold Bendix in 2014.

### Materially False and Misleading Statements Issued During the Class Period

21. The Class Period begins on February 9, 2018, when the Company filed an annual report on Form 10-K with the SEC, announcing the Company's financial and operating results for the quarter and year ended December 31, 2017 (the "2017 10-K"). The 2017 10-K reported asbestos related liabilities attributable to Bendix of $616 million as of December 31, 2017. The 2017 10-K also discussed the Company's asbestos-related liabilities, stating in relevant part that:[1]

> ***Asbestos Related Contingencies and Insurance Recoveries***—Honeywell's involvement in asbestos related personal injury actions relates to two predecessor companies. Regarding North American Refractories Company ("NARCO") asbestos related claims, we accrued for pending claims based on terms and conditions in agreements with NARCO, its former parent company, and certain asbestos claimants, and an estimate of the unsettled claims pending as of the time NARCO filed for bankruptcy protection. We also accrued for the estimated value of future NARCO asbestos related claims expected to be asserted against the NARCO Trust. The estimate of future NARCO claims was prepared in 2002, in the same year NARCO filed for bankruptcy protection, using NARCO tort system litigation experience based on a commonly accepted methodology used by numerous bankruptcy courts addressing 524(g) trusts. Accordingly, the estimated value of future NARCO asbestos claims was prepared before there was data on

---

[1] Emphases added throughout, unless otherwise noted.

claims filings and payment rates in the NARCO Trust under the Trust Distribution Procedures and also prepared when the stay of all NARCO asbestos claims was in effect (which remained in effect until NARCO emerged from Bankruptcy protection). Some critical assumptions underlying this commonly accepted methodology included claims filing rates, disease criteria and payment values contained in the Trust Distribution Procedures, estimated approval rates of claims submitted to the NARCO Trust and epidemiological studies estimating disease instances. The estimated value of the future NARCO liability reflects claims expected to be asserted against NARCO over a fifteen year period. This projection resulted in a range of estimated liability of $743 million to $961 million. We believe that no amount within this range is a better estimate than any other amount and accordingly, we have recorded the minimum amount in the range. Given the Trust's lack of sufficient claims processing experience since NARCO emerged from bankruptcy protection, it is not yet possible to reliably estimate future claim costs based on actual Trust experience. ***Regarding Bendix Friction Materials ("Bendix") asbestos related claims, we accrued for the estimated value of pending claims using average resolution values for the previous five years. We also accrued for the estimated value of future anticipated claims related to Bendix for the next five years based on historic claims filing experience and dismissal rates, disease classifications, and average resolution values in the tort system for the previous five years***. In light of the uncertainties inherent in making long-term projections, as well as certain factors unique to friction product asbestos claims, we do not believe that we have a reasonable basis for estimating asbestos claims beyond the next five years.

***In connection with the recognition of liabilities for asbestos related matters, we record asbestos related insurance recoveries that are deemed probable.*** In assessing the probability of insurance recovery, we make judgments concerning insurance coverage that we believe are reasonable and consistent with our historical dealings and our knowledge of any pertinent solvency issues surrounding insurers. While the substantial majority of our insurance carriers are solvent, some of our individual carriers are insolvent, which has been considered in our analysis of probable recoveries. Projecting future events is subject to various uncertainties that could cause the insurance recovery on asbestos related liabilities to be higher or lower than that projected and recorded. Given the inherent uncertainty in making future projections, we reevaluate our projections concerning our probable insurance recoveries in light of any changes to the projected liability, our recovery experience or other relevant factors that may impact future insurance recoveries.

22.    The 2017 10-K contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by the Individual Defendants, stating that the filing "does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the

6

statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report[.]"

23.     On April 20, 2018, the Company filed a quarterly report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the first quarter of 2018 (the "Q1'18 10-Q"). The Q1'18 10-Q reported asbestos related liabilities attributable to Bendix of $615 million as of March 31, 2018.  The Q1'18 10-Q also discussed the Company's asbestos-related liabilities, stating in relevant part that:

> Our consolidated financial statements reflect an estimated liability for resolution of pending (claims actually filed as of the financial statement date) and future Bendix-related asbestos claims. ***We have valued Bendix pending and future claims using average resolution values for the previous five years***. We update the resolution values used to estimate the cost of Bendix pending and future claims during the fourth quarter each year.
>
> The liability for future claims represents the estimated value of future asbestos related bodily injury claims expected to be asserted against Bendix over the next five years. Such estimated cost of future Bendix-related asbestos claims is based on historic claims filing experience and dismissal rates, disease classifications, and resolution values in the tort system for the previous five years. In light of the uncertainties inherent in making long-term projections, as well as certain factors unique to friction product asbestos claims, we do not believe that we have a reasonable basis for estimating asbestos claims beyond the next five years. The methodology used to estimate the liability for future claims is similar to that used to estimate the liability for future NARCO-related asbestos claims.

24.     The Q1'18 10-Q contained signed certifications pursuant to SOX by the Individual Defendants, stating that the filing "does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report[.]"

25.     On July 20, 2018, the Company filed a quarterly report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the second quarter of 2018

(the "Q2'18 10-Q"). The Q2'18 10-Q reported asbestos related liabilities attributable to Bendix of $610 as of June 30, 2018.

26.     The Q2'18 10-Q also discussed the Company's asbestos-related liabilities, stating in relevant part that:

> Our consolidated financial statements reflect an estimated liability for resolution of pending (claims actually filed as of the financial statement date) and future Bendix-related asbestos claims. ***We have valued Bendix pending and future claims using average resolution values for the previous five years***. We update the resolution values used to estimate the cost of Bendix pending and future claims during the fourth quarter each year.
>
> The liability for future claims represents the estimated value of future asbestos related bodily injury claims expected to be asserted against Bendix over the next five years. Such estimated cost of future Bendix-related asbestos claims is based on historic claims filing experience and dismissal rates, disease classifications, and resolution values in the tort system for the previous five years. In light of the uncertainties inherent in making long-term projections, as well as certain factors unique to friction product asbestos claims, we do not believe that we have a reasonable basis for estimating asbestos claims beyond the next five years. The methodology used to estimate the liability for future claims is similar to that used to estimate the liability for future NARCO-related asbestos claims.

27.     The Q2'18 10-Q contained signed certifications pursuant to SOX by the Individual Defendants, stating that the filing "does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report[.]"

28.     On August 23, 2018, the Company issued a press release, which was attached as Exhibit 99 to a Form 8-K filed with the SEC that same day. The Company disclosed that it was required to revise its method for estimating its liability for unasserted Bendix asbestos-related claims by considering the epidemiological projections through 2059 of future incidence of Bendix asbestos-related disease.   As a result, the Company's prior reported financials

underestimated its asbestos-related liability attributable to Bendix by over *$1 billion*. In the August 2018 press release the Company stated that "Bendix asbestos-related liability is estimated to be $1,693 million as of June 30, 2018."

29.     The statements referenced in ¶¶ 21-27 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Honeywell's Bendix asbestos-related liability was greater than initially reported; (ii) the Company maintained improper accounting practices in connection with its Bendix asbestos-related liability; and (iii) as a result, Honeywell's public statements were materially false and misleading at all relevant times.

## The Truth Begins to Emerge

30.     The full extent of Honeywell's improper accounting for its asbestos liability attributable to Bendix was revealed on October 19, 2018, when the Company issued a press release announcing its third quarter 2018 earnings, which was also attached as Exhibit 99 to Form 8-K, and filed its quarterly report with the SEC for the quarter ended September 30, 2018.  In its quarterly report, Honeywell disclosed that the SEC's Division of Corporate Finance had reviewed Honeywell's prior accounting for liability for unasserted Bendix-related asbestos claims" and that "[o]n September 13, 2018, following completion of Corporation Finance's review, the SEC Division of Enforcement advised that it has opened an investigation related to this matter.

31.     Further, the Company revised its Bendix-related asbestos liability, disclosing that "[t]he Company's revised estimated asbestos-related liabilities are now $2,610 million as of December 31, 2017, which is $1,087 million higher than the Company's prior estimate."

32.     On this news, Honeywell's stock price fell $1.72 per share, or 1.11%, to close at $153.47 per share on October 19, 2018.  Over the following three trading sessions, Honeywell's stock price fell by an additional $7.87, or 5.3%, to close at $140.72 per share on October 24, 2018.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

33.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Honeywell securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

34.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Honeywell securities were actively traded on the NYSE.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Honeywell or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

35. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

36. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

37. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Honeywell;

- whether the Individual Defendants caused Honeywell to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Honeywell securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

38. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually

redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

39.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Honeywell  securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NYSE and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Honeywell securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

40.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

41.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

### COUNT I

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)**

42.     Plaintiff repeats and reallege each and every allegation contained above as if fully set forth herein.

43.     This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

44.     During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did:  (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Honeywell securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Honeywell securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

45.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Honeywell securities.  Such reports, filings, releases and statements

were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Honeywell finances and business prospects.

46.     By virtue of their positions at Honeywell , Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants.  Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth.  In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

47.     Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control.  As the senior managers and/or directors of Honeywell, the Individual Defendants had knowledge of the details of Honeywell internal affairs.

48.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.  Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Honeywell.  As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Honeywell businesses, operations, future financial condition and future prospects.  As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Honeywell securities was artificially inflated throughout the Class Period.  In

ignorance of the adverse facts concerning Honeywell business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Honeywell securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

49.     During the Class Period, Honeywell securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Honeywell securities at prices artificially inflated by Defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Honeywell securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of Honeywell securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

50.     By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

51.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure

that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against The Individual Defendants)**

52.     Plaintiff repeats and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

53.     During the Class Period, the Individual Defendants participated in the operation and management of Honeywell, and conducted and participated, directly and indirectly, in the conduct of Honeywell business affairs.  Because of their senior positions, they knew the adverse non-public information about Honeywell misstatement of income and expenses and false financial statements.

54.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Honeywell financial condition and results of operations, and to correct promptly any public statements issued by Honeywell which had become materially false or misleading.

55.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Honeywell disseminated in the marketplace during the Class Period concerning Honeywell results of operations.  Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Honeywell to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Honeywell within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they

participated in the unlawful conduct alleged which artificially inflated the market price of Honeywell securities.

56.     Each of the Individual Defendants, therefore, acted as a controlling person of Honeywell.   By reason of their senior management positions and/or being directors of Honeywell, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Honeywell to engage in the unlawful acts and conduct complained of herein.   Each of the Individual Defendants exercised control over the general operations of Honeywell and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

57.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Honeywell.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.     Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.     Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.     Awarding such other and further relief as this Court may deem just and proper.

## <u>DEMAND FOR TRIAL BY JURY</u>

Plaintiff hereby demands a trial by jury.

Dated:  October 31, 2018

Respectfully submitted,

**POMERANTZ LLP**

*/s/ Jonathan Lindenfeld*

Jonathan Lindenfeld
Jeremy A. Lieberman
J. Alexander Hood II
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone:  (212) 661-1100
Facsimile:  (212) 661-8665
Email:  jlindenfeld@pomlaw.com
        jalieberman@pomlaw.com
        ahood@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone:  (312) 377-1181
Facsimile:  (312) 377-1184
Email:  pdahlstrom@pomlaw.com

*Attorneys for Plaintiff*

## CERTIFICATION PURSUANT
## TO FEDERAL SECURITIES LAWS

1.    I, _____DAVID KAWEFSKY_____, make this

declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section

21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities

Litigation Reform Act of 1995.

2.    I have reviewed a Complaint against Honeywell International Inc. ("Honeywell" or the

"Company"), and authorize the filing of a comparable complaint on my behalf.

3.    I did not purchase or acquire Honeywell securities at the direction of plaintiffs counsel, or in order

to participate in any private action arising under the Securities Act or Exchange Act.

4.    I am willing to serve as a representative party on behalf of a Class of investors who purchased or

acquired Honeywell securities during the class period, including providing testimony at deposition and trial, if

necessary. I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.    To the best of my current knowledge, the attached sheet lists all of my transactions in Honeywell

securities during the Class Period as specified in the Complaint.

6.    During the three-year period preceding the date on which this Certification is signed, I have not

sought to serve as a representative party on behalf of a class under the federal securities laws.

7.    I agree not to accept any payment for serving as a representative party on behalf of the class as set

forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses

directly relating to the representation of the class as ordered or approved by the Court.

8.   I declare under penalty of perjury that the foregoing is true and correct.

Executed      _10/24/18_____

              **(Date)**

                           _David Kaneksky_____

                                **(Signature)**

                           _DAVID KANESKY_____

                             **(Type or Print Name)**

**Honeywell International, Inc. (HON)**                              **Kanefsky, David**

### List of Purchases and Sales

| Date | Purchase or Sale | Number of Shares/Unit | Price Per Share/Unit |
|---|---|---|---|
| 8/28/2018 | Purchase | 500 | $159.3742 |
| 8/28/2018 | Purchase | 400 | $159.4482 |
| 9/7/2018 | Purchase | 500 | $162.4200 |