UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DAVID KANEFSKY, Individually and on Behalf of Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>HONEYWELL INTERNATIONAL INC., *et al.*<br><br>Defendants. | 18-cv-15536<br><br>OPINION |

**WILLIAM J. MARTINI, U.S.D.J.:**

This putative securities class action arises out of Defendant Honeywell International Inc.'s ("Honeywell") allegedly misleading statements regarding asbestos-related liabilities. The matter comes before the Court on Defendants Honeywell, Darius Adamcyzk, Thomas Szlosek, and Gregory Lewis's ("Individual Defendants" and with Honeywell, "Defendants") motion to dismiss. ECF No. 91. For the reasons set forth below, the motion is **DENIED**.

### I.   BACKGROUND[1]

Honeywell is a multinational conglomerate that produces a wide range of consumer and industrial products. AC ¶ 26. In 1999, Honeywell acquired Bendix Friction Materials ("Bendix"). AC ¶ 2. As a result of the Bendix acquisition, Honeywell faced substantial liabilities due to Bendix's use of asbestos in the automobile brakes it manufactured. *Id.*

#### A.   Alleged Misstatements

On February 9, 2018, Honeywell filed its 2017 10-K. The 2017 10-K reported year-end Bendix-related liabilities of $616m. *Id.* ¶ 2; 2017 10-K at 69, ECF No. 92-1. Honeywell disclosed that the figure "represents the estimated value of future asbestos related bodily injury claims expected to be asserted against Bendix over the next five years." 2017 10-K at 72 (hereinafter, "Horizon Disclosure"). "In light of the uncertainties inherent in making long-term projections, as well as certain factors unique to friction product asbestos claims, [Honeywell did] not believe that [it had] a reasonable basis for estimating asbestos claims beyond the next five years." *Id.* Honeywell repeated that disclosure and included 5-years of expected Bendix liabilities in its quarterly reports for Q1 and Q2 of 2018, filed April 20 and July 20, respectively. Q1 10Q at 22, 25, ECF No. 92-5; Q2 10Q at 23, 26, ECF No. 92-6.

Plaintiff, a Honeywell shareholder, alleges that those SEC filings (and various statements related thereto) were materially false and misleading. *See* AC ¶¶ 131-170. In truth, Plaintiff alleges, Defendants knew (or could have reasonably estimated) the value of *all*

---

[1] The facts alleged in the Amended Complaint, ECF No. 80 ("AC"), are accepted as true for the purposes of this Opinion. The Court also considers matters of public record and documents incorporated into the AC. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

1

future Bendix liabilities but wanted to keep that amount concealed until the liability could be passed off to another company. AC ¶¶ 2-3, 8, 17-19. To that end, Plaintiff alleges that Honeywell's senior management devised a plan to spin off two divisions into independent companies named Garrett Motion Inc. ("Garrett") and Resideo Technologies, Inc. ("Resideo"). AC ¶ 5. Defendant Darius Adamcyzk—Honeywell's President and CEO—was the alleged "architect" of the scheme. AC ¶¶ 27, 62. Defendant Thomas Szlosek was Honeywell's Chief Financial Officer until his retirement in August 2018. AC ¶ 28. Defendant Gregory Lewis was Honeywell's Vice President of Corporate Finance and took over as CFO upon Szlosek's retirement. AC ¶ 29.

### B. Communications with the SEC Regarding Bendix Liabilities

On May 1, 2018—well before filing its 2Q 10Q—Honeywell submitted a draft registration statement for the planned Garrett spinoff. The registration statement specified that Garrett would enter an "Indemnification and Reimbursement Agreement" ("Indemnity Agreement") with Honeywell. AC ¶ 63. The Indemnity Agreement required Garrett to cover 90% of Honeywell's legacy Bendix liabilities. *Id.*

The registration statement prompted a four-month back-and-forth between Honeywell and the SEC regarding Honeywell's accounting treatment of Bendix liabilities. AC ¶¶ 67-88. On May 24, 2018, the SEC told Honeywell it did "not believe there is a conceptual basis for limiting an ASC 450[2] assessment to a certain time horizon. . . . [The] assessment should consider all claims without limitation to a specific time period." AC ¶ 67. After Honeywell responded, the SEC pressed further, inquiring if Honeywell had attempted to estimate a liability beyond five years, AC ¶¶ 68-70. And if so, why did Honeywell believe the result was not sufficiently reliable? *Id.*

On June 29, 2018—before issuing the 2Q 10-Q—Honeywell responded that by extrapolating from current claim data, it "generated an estimated reasonably possible exposure over the full term of the epidemiological projections for potential claims not yet asserted of $1.3." AC ¶ 71; Fritzler Ex. 11 at 3-4, ECF No. 92-11. However, that number did not provide "a reasonable estimate of probable and estimable liabilities given that any such projection would be based on the application of key variables that are unreliable beyond the immediate five-year term and would not give proper effect to the impact of scientific developments and Honeywell's aggressive litigation strategies." Fritzler Ex. 11 at 5.

On August 8, 2018, after more back-and-forth and the 2Q 10Q, Honeywell relented. Honeywell told the SEC it "determined that it had not appropriately applied the provisions of ASC 450. . . . [T]he appropriate application of ASC 450 . . . is to reflect the full term of the

---

[2] ASC 450 is the accounting principle applicable to loss contingencies. Under ASC 450-20-25-2, "[a]n estimated loss from a contingency shall be accrued by a charge to income if . . . (a) Information available before the financial statements are issued . . . indicates that it is *probable* that . . . a liability had been incurred at the date of the financial statement . . . [and] (b) The amount of loss can be *reasonably estimated*." Fritzler Ex. 2 at 5, ECF No. 92-2 ("ASC 450") (emphasis added). When a loss is probable but only a range, not one figure, can be reasonably estimated, ASC 450 still requires companies to make an accrual for the loss at the low end of the range. *Id.* at 6; ASC 450-20-30-1.

2

epidemiological projections." AC ¶ 76; Fritzler Ex. 14 at 2, ECF No. 93-1. As a result, Honeywell planned "to revise its historical consolidated financial statements in future filings." Fritzler Ex. 14 at 2. While immaterial to Honeywell—thus correctable via revision—Garrett would restate the financials in its registration statement. *Id.*[3]

On August 14, 2018, the SEC sent Honeywell a letter with respect to its 2017 10K. AC ¶ 82. The SEC asked for an explanation of why Honeywell used two different time periods in estimating Bendix and another type of asbestos liabilities: NARCO. *Id.* The SEC also sought an analysis and the basis for the time periods applied under ASC 450. *Id.*

### C. August 20 Letter

In an August 20, 2018 letter, Honeywell "propos[ed] to change [its] accounting treatment for Bendix asbestos-related liabilities to a terminal value time horizon." Fritzler Ex. 3 at 1, ECF No. 92-3 ("August 20 Letter"). Honeywell elaborated that because "the error cannot be corrected through the 2018 income statement [it] must, therefore be corrected via a revision of prior periods." *Id.* App'x at 2. Honeywell provided an assessment of "whether the revision for this error represents a material restatement or immaterial restatement (i.e. revision)." *Id.* After excluding the impact of one-time tax reforms, Honeywell determined the effect on all key metrics was under 5%. *Id.* Thus, Honeywell concluded "that such restatement should be characterized and processed as an immaterial restatement and referred to as a 'revision' of previously issued financial statements." *Id.*

At the same time, Honeywell made several key admissions ("Admissions"), including: (1) it "had not appropriately applied the provisions of ASC 450 when measuring asbestos liabilities"; (2) "the appropriate application of ASC 450 . . . is to reflect the full term of the epidemiological projections in the measurement of such liability"; (3) Honeywell "had obtained and used the data to properly value a liability, but made the incorrect judgment based on what the data would have otherwise indicated had it not truncated the liability at a five-year horizon"; and (4) "[t]he Company did not consider or use all available evidence to evaluate whether they should apply the full term or any other time horizon." *Id.* at 3 (main letter), App'x at 6. While Honeywell stressed that it used third-parties to help assess Bendix liabilities, it also stated that "Management" (5) "reviews the specialist report . . . and discusses with the specialist the significant actuarial inputs"; (6) "has historically . . . held discussions with the specialist regarding the time horizon used"; and (7) "approves any adjustment to the unasserted claims liability amount." *Id.* App'x at 4-5. Finally, (8) the revision "implies that there was information available that should have caused [Honeywell] to modify the time horizon used for the Bendix unasserted claims liability at an earlier point." *Id.* at 8.

---

[3] Pursuant to SEC rules, filers must restate their financial statements if changes are necessitated by "mistakes in the application of accounting principles, or oversight or misuse of facts that existed at the time the financial statements were prepared." *Payne v. DeLuca*, 433 F. Supp. 2d 547, 577 (W.D. Pa. 2006) (cleaned up). Restatements are unnecessary, however, when the adjustment is immaterial. *See* SAB 99 (including disclaimer that "[t]he provisions of this [rule] need not be applied to immaterial items."). Immaterial adjustments are made via "revision" which "may be made the next time the registrant files the prior year financial statements." SAB 108; ASC 250.

### D. Purported Corrective Disclosures

On August 23, 2018,[4] Honeywell filed a form 8-K, publicly announcing that it would revise its Bendix liabilities to reflect "the full term of epidemiological projections through 2059." AC ¶ 172; Fritzler Ex. 15 at 2, ECF No. 93-2 ("August 8-K"). The attached balance sheets showed a $1,083m adjustment, resulting in a $1,693m total Bendix liability. Fritzler Ex. 15, App'x. The same day, Honeywell issued a press release, held a conference call, and made a presentation on the Garrett and Resideo spinoffs. AC ¶ 178. In those communications, Honeywell allegedly revealed that the spinoffs would cover 90% of Honeywell's asbestos liabilities through 2048. *Id.*

Plaintiff accuses Honeywell of timing the additional disclosures to blunt the effect of the August 8-K. AC ¶¶ 178, 233. Allegedly due to the balance of news, the stock price remained relatively steady, gaining slightly over August 23 and declining slightly over August 24. AC ¶¶ 8, 179. But according to Plaintiff, "[h]ad it not been for the accounting disclosures, the good news about the indemnification and an additional announcement . . . would have buoyed the stock price much higher." AC ¶ 181.

On October 10, 2018, the SEC publicly released its August 14 and August 20, 2018 correspondences with Honeywell. AC ¶ 183. Thus, the Admissions in the August 20 Letter were publicly revealed for the first time. *Id.* On the same day, Honeywell issued a press release announcing that the Resideo spinoff would be completed ahead of schedule and that Honeywell would hold an "Investor Showcase" that day. AC ¶ 200. Plaintiff alleges this was another attempt to minimize the impact of negative news. AC ¶ 266. Despite the balance of news, the stock price declined by $6.90/share between opening on October 10 and closing on October 11 (adjusted). AC ¶ 204.

Finally, on October 19, 2018, Honeywell filed its Q3 10Q. AC ¶ 267. The form contained (1) Honeywell's adjusted Bendix-related liabilities and (2) revealed that "it received notice from the SEC on September 13, 2018, that it was under investigation." *Id.* The announcement received significant media attention and Honeywell's stock price declined between October 19, 2018, and October 24, 2018. AC ¶¶ 268-273.

## II. STANDARD OF REVIEW

Plaintiff alleges violations of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder (Count One), as well as derivative Section 20(a)

---

[4] Plaintiff Charles Francisco purchased shares on September 11, 2018, *after* the first corrective disclosure. AC, Schedule. Thus, the Court foresees problems arising at the class certification stage. *See In re Cendant Corp. Litig.*, 264 F.3d 201, 265 (3d Cir. 2001) (discussing adequacy and typicality requirements). This was neither Mr. Francisco nor his current counsel's fault. *See* ECF Nos. 1-98 (procedural history in which a since-replaced law firm moved for lead plaintiff status, before that firm attempted to replace Plaintiff, without permission or raising the share purchase date). Accordingly, the Parties **MUST** meet and confer to determine whether they can resolve foreseeable class representation issues due to Plaintiff's purchase date, before they cause a delay. *See In re Herley Indus.*, 06-cv-2596, 2010 WL 176869, at *3 (E.D. Pa. Jan. 15, 2010) (discussing approaches taken by courts when the already-appointed lead plaintiff must be replaced or supplemented).

4

claims against the Individual Defendants (Count Two). Defendants move to dismiss both counts. To survive the motion, Plaintiffs' claims must satisfy the Private Securities Litigation Reform Act ("PSLRA") and FRCP 9(b)'s heightened pleading standards.

Under Rule 9(b), "a party must state with particularity the circumstances constituting fraud." FRCP 9(b). But "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Id.* And as will be discussed in more detail below, the PSLRA similarly requires plaintiffs to (1) plead the allegedly misleading statements "with particularity" and (2) raise a "strong inference" of scienter based on particular pleadings. 15 U.S.C. § 78u-4(b). In other respects, the normal FRCP 12(b)(6) standards apply, in which the Court assumes factual allegations are correct and asks whether Plaintiff has plausibly stated a claim on which relief can be granted. *Tellabs*, 551 U.S. at 322.

## III. DISCUSSION

To state a 10b-5 claim, plaintiffs "must allege defendants made a misstatement or an omission of material fact with scienter in connection with the purchase or the sale of a security upon which plaintiffs reasonably relied and plaintiffs' reliance was the proximate cause of their injury." *Rahman v. Kid Brands*, 736 F.3d 237, 242 (3d Cir. 2013). Here, Defendants argue Plaintiff failed to plead actionable misstatements or omissions, scienter, or loss causation.[5]

### A. Misstatements and Omissions

#### 1. *Bendix-Related Asbestos Liabilities and Horizon Disclosures*

The primary alleged misstatements are the Bendix liabilities and Horizon Disclosures, contained in Honeywell's SEC filings. ASC 450 controls the accounting for Bendix liabilities. ASC 450 requires registrants to report reasonable estimates of probable future losses. *See supra* n.2. Thus, the Bendix liability represents an educated approximation of future claims, i.e., an opinion. *See In re Hertz Glob. Holdings, Inc. Sec. Litig.*, 13-cv-7050, 2017 WL 1536223, at *11 (D.N.J. Apr. 27, 2017), *aff'd sub nom. In re Hertz Glob. Holdings Inc*, 905 F.3d 106 (3d Cir. 2018) (finding ASC 450 determinations were opinions). Likewise, the Horizon Disclosures were opinions on Honeywell's ability to estimate losses beyond five years. Like the figures themselves, the determination that available data could not predict future liabilities with sufficient accuracy is an opinion. And as opinions, the statements are treated differently than propositions of fact.

Plaintiff argues that even if the statements are opinions, they are actionable under the standard set forth in *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 179 (2015) (finding omissions actionable under Section 11 if the undisclosed "facts conflict with what a reasonable investor would take from the statement itself"). Opp.

---

[5] Plaintiff repeatedly argues Honeywell restated its financial statements, and that is enough to satisfy the misstatement and scienter elements. Notwithstanding Plaintiff's repeated use of the term "restatement," Plaintiff cannot "rest [his] allegations . . . on an inference from a restatement which did not occur." *Payne*, 433 F. Supp. 2d at 578. Honeywell *revised* its financial statements; it did not *restate* them. *See supra* n.3; Fritzler Ex. 14 at 2; August 8-K at 2.

5

at 9-10. The Third Circuit has yet to opine on whether *Omnicare* applies to Section 10 claims. *See Jaroslawicz v. M&T Bank Corp.*, 912 F.3d 96, 113 (3d Cir. 2018), *reh'g granted, judgment vacated*, 925 F.3d 605 (3d Cir. 2019). Here, the Court need not take a position because the statements satisfy the more restrictive, pre-*Omnicare* standard. Under that test, opinions are actionable if "they are not honestly believed and lack a reasonable basis." *City of Edinburgh Council v. Pfizer, Inc.*, 754 F.3d 159, 170 (3d Cir. 2014).

The Horizon Disclosures stated that Honeywell did "not believe that [it had] a reasonable basis for estimating asbestos claims beyond the next five years." AC ¶ 135. But in the August 20 Letter, Honeywell admitted that it "had obtained and used the data to properly value a liability, but made the incorrect judgment *based on what the data would have otherwise indicated* had it not truncated the liability at a five-year horizon." August 20 Letter at App'x at 6 (emphasis added). Thus, the AC sufficiently alleges Honeywell chose to truncate its Bendix liabilities "based on what the data would have otherwise indicated," not because the data was unreliable, as claimed in the Horizon Disclosers. *Id.* And because Honeywell allegedly had sufficient data to estimate long-term liabilities, the opinion in the Horizon Disclosure (that it lacked such data) lacked "a reasonable basis." *City of Edinburgh Council*, 754 F.3d at 170. In sum, Honeywell's claim that it lacked data to estimate liabilities beyond five years is actionable, assuming (as alleged) Honeywell knew it had sufficient data the whole time. *See* AC ¶¶ 136, 147, 157.

### 2. *Statements in Sarbanes-Oxley Certifications*

The analysis for Defendants' Sarbanes-Oxley Act ("SOX") certifications is similar. SOX requires registrants' management to submit sworn certifications that—based on their knowledge—financial statements do not include material misstatements. 15 U.S.C. § 7241; 17 C.F.R. § 240.13a *et seq.* As discussed, the AC alleges Defendants knew they could reliably estimate Bendix liabilities beyond five years, but stated otherwise. *See supra* Part III.B.1; AC ¶¶ 136, 147, 157. Thus, the SOX certifications' guarantee that the signatories lacked knowledge of a material misstatement is also false. *See* AC ¶¶ 138, 148, 161, 231-232. That conclusion is bolstered by the Admissions in Honeywell's August 20 Letter, particularly that "Management has historically . . . held discussions with the specialist regarding the time horizon used." August 20 Letter App'x at 4-5.

### 3. *Earnings Call Statements*

Plaintiff also alleges statements made during a July 20, 2018 investor call are actionable. AC ¶¶ 166-170. In response to a question about Garrett and Resideo, Lewis stated that "both businesses are performing well" and "obviously, with the SEC process, that is a bit out of our hands but it's going well." AC ¶ 167. These statements are simply expressions of corporate optimism, also known as "puffery." *In re Aetna, Inc. Sec. Litig.*, 617 F.3d 272, 283 (3d Cir. 2010). They are not actionable. *See id.*

### 4. *Omitting Information on Ongoing Investigations*

Lastly, Plaintiff alleges Honeywell's 2Q 10Q was false and misleading because it did not alert investors of (1) the communications with the SEC or (2) "that the SEC was contemplating an investigation or legal proceeding." AC ¶ 158. Defendants argue they had

6

no obligation to disclose the communications or a potential SEC action. Mot. at 16-17. Plaintiff responds that notice was necessary to prevent the filings from being misleading. Opp. at 11-12. The Court agrees with Plaintiff to some extent.

Disclosing the SEC's inquiry—thus warning of a potential Bendix liabilities revision—could have alleviated the misleading nature of the Horizon Disclosures. Therefore, under the facts alleged, failure to disclose the SEC inquiry is an actionable omission. *See Oran v. Stafford*, 226 F.3d 275, 282 (3d Cir. 2000) ("defendant . . . omitted to state a material fact necessary to make a statement not misleading."). If the evidence shows the Horizon Disclosures were true (or at least truly-held beliefs), the Court will revisit whether Honeywell's failure disclose the SEC's interest is independently actionable.

In sum, the AC adequately alleges three interrelated misstatements and omissions: (1) Bendix liabilities and Horizon Disclosures (taken together); (2) SOX certifications; and (3) failure to disclose the SEC inquiry, potentially curing the alleged misstatements.

### B. Scienter

Defendants alternatively argue Plaintiff failed to adequately plead scienter. Mot. at 18-28. "Scienter" means "a mental state embracing intent to deceive, manipulate, or defraud." *Tellabs*, 551 U.S. at 308. The PSLRA requires plaintiffs to allege facts—with particularity—raising a "strong inference" of scienter. *Id.* at 313 (citing 15 U.S.C. § 78u-4(b)). "The inquiry is inherently comparative. *Id.* at 323. "[A] court must consider plausible, nonculpable explanations for the defendant's conduct." *Id.* at 324. "The inference [of] scienter need not be . . . the most plausible of competing inferences." *Id.* But it must be "at least as strong as any opposing inference." *Id.* at 326.

Defendants argue that its Bendix liabilities were the result of "a good-faith, if unsuccessful, effort to apply subjective accounting guidelines to complex asbestos liabilities." Mot. at 18. That may prove true.[6] But under the facts alleged (with adequate particularity), the inference of scienter is "at least as strong." *Tellabs*, 551 U.S. at 326. Especially relevant here is that Honeywell admitted it "had obtained and used the data to properly value a liability, but made the incorrect judgment based on what the data would have otherwise indicated had it not truncated the liability at a five-year horizon." August 20 Letter, Appx. A at 6. Making the "incorrect judgment" due to "what the data would have otherwise indicated" comes close to admitting manipulative intent. *Id.*; *Tellabs*, 551 U.S. at 324 (no "smoking gun" required).

Several other allegations bolster the inference of scienter: (1) the revision involved a large sum and was not based on new information. Thus, but for Honeywell's own conclusion of immateriality, it likely would have resulted in a restatement, *see supra* n.3; (2) Honeywell had steady Bendix liabilities over a ten-year period, despite its claims that estimating liabilities beyond five years was impossible, AC ¶ 75; (3) Honeywell used a different time horizon for other asbestos-liability predictions, AC ¶ 82; (4) corrective disclosures were

---

[6] Honeywell informed the SEC it had enough data to make long-term predictions *after* filing the 2Q 10Q on July 20, 2018. AC ¶ 76 (August 8, 2018 Letter). Thus, it is possible that Defendants believed the Horizon Disclosure. *But see* AC ¶¶ 136, 147, 157 (alleging knowledge throughout class period).

7

suspiciously accompanied by positive news; (5) Defendants Adamcyzk and Lewis were financially rewarded for indemnifying Honeywell from Bendix liabilities, AC ¶ 243; and (6) Garrett now claims the Indemnity Agreement is unenforceable due to the circumstances of its creation—i.e., a single Honeywell attorney, serving as the only board member of Garrett at the time, signed off, AC ¶ 258. In combination with the Admissions, these alleged facts raise a strong inference of scienter. Accordingly, scienter is adequately pled.

### C. Loss Causation

#### 1. Corrective Disclosures Show Loss Causation

Defendants also argue Plaintiff fails to allege loss causation. The "loss causation inquiry asks whether the misrepresentation or omission proximately caused the economic loss." *McCabe v. Ernst & Young, LLP*, 494 F.3d 418, 426 (3d Cir. 2007). The misstatements or omissions must have been "a substantial factor." *Id.* at 429. The determination "includes considerations of materiality, directness, foreseeability, and intervening causes." *Id.* Put another way, loss causation requires the "very facts about which the defendant lied" to cause the injuries. *Id.* Unlike for the scienter and misstatement elements, the normal pleading standard of FRCP 8(a) applies to questions of loss causation. *Hall v. Johnson & Johnson*, 18-cv-1833, 2019 WL 7207491, at *27 (D.N.J. Dec. 27, 2019).

Plaintiff alleges that after each corrective disclosure, Honeywell's stock price performed worse than it would have if the negative news had not been revealed. AC ¶¶ 181; 265-66, 267-272. Given the facts alleged, that allegation is plausible. *Id.*; *see also Hall*, 2019 WL 7207491, at *27. At this stage, Plaintiff need not disaggregate the damage caused by the alleged fraud from changes due to other market forces. *De Vito v. Liquid Holdings Grp., Inc.*, 15-6969, 2018 WL 6891832, at *41 (D.N.J. Dec. 31, 2018); *see also* FRCP 8(a). Thus, Plaintiff sufficiently alleges loss causation.

#### 2. Third Quarter 10Q

One remaining issue merits attention. Defendants argue Honeywell's Q3 10Q cannot qualify as a "corrective disclosure" because it did not reveal any new information about the fraud. Mot. at 30. The 10Q included (1) adjusted Bendix liabilities and (2) that Honeywell had "received notice from the SEC on September 13, 2018[,] that it was under investigation." AC ¶ 267. The Court agrees that the adjusted Bendix liabilities were previously disclosed and thus do not qualify as a "corrective disclosure." Similarly, Honeywell never misrepresented or omitted anything regarding the SEC's formal inquiry, and the SEC's informal interest was already public. Thus, the 10Q was not "corrective."

But the SEC investigation—and the corresponding stock drop—was a foreseeable consequence of Honeywell's alleged fraud. *See McCabe*, 494 F.3d at 436 (considering "materiality, directness, foreseeability, and intervening causes"). The size of the revision and Honeywell's Admissions made an SEC inquiry likely. And the announcement clearly effected investors' views (and Honeywell's stock price). AC ¶¶ 267-72. Thus, the alleged fraud sufficiently caused the SEC investigation and corresponding loss. *See McCabe*, 494 F.3d at 436 (relying on "general causation principles").

This is essentially the "materialization of risk" theory of loss causation. *See Lentell v. Merrill Lynch*, 396 F.3d 161, 173 (2d Cir. 2005) (requiring that "the loss be foreseeable *and* that the loss be caused by the materialization of the concealed risk."). While the Third Circuit has not explicitly adopted the theory, it has cited approvingly to authorities endorsing the approach. *See McCabe*, 494 F.3d at 429 (calling approach "consistent with our loss causation jurisprudence"). Regardless of formal title, an SEC investigation into the misrepresentations at issue, resulting in a stock drop, fits within the Third Circuit's definition of loss causation. *See id.* at 426 ("plaintiff must show that the defendant misrepresented or omitted the very facts that were a substantial factor in causing the plaintiff's economic loss."). Accordingly, the AC adequately alleges loss causation.

### D. Section 20(a) Claims

Defendants only arguments in support of dismissing the Section 20(a) claims are derivative of their Section 10 arguments. Mot. at 30. Accordingly, Count Two survives.

## IV. CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss, ECF No. 91, is **DENIED**. An appropriate order follows.

Date: May 18, 2020

/s/ William J. Martini
WILLIAM J. MARTINI, U.S.D.J.