UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **DAVID KANEFSKY, Individually and on Behalf of all Others Similarly Situated,** | Docket No.: 18-cv-15536 (WJM) |
| **Plaintiffs,** | |
| **v.** | **OPINION** |
| **HONEYWELL INTERNATIONAL INC., DARIUS ADAMCZYK, and THOMAS A. SZLOSEK,** | |
| **Defendants.** | |

**WILLIAM J. MARTINI, U.S.D.J.:**

Presently before the Court in this securities fraud class action against Defendant Honeywell International Inc. ("Honeywell" or the "Company"), Darius Adamczyk, and Thomas A. Szlosek (collectively, "Defendants") are two motions by Plaintiffs: 1) for final approval of a class action settlement; and 2) for an award of attorneys' fees and expenses and compensatory awards for the lead Plaintiffs, Charles M. Francisco ("Francisco") and Iron Workers Local 580 – Joint Funds ("Iron Workers") (collectively, "Plaintiffs"). ECF No. 182. For the reasons stated below, the motions are **GRANTED** and the settlement is finally **APPROVED**.

**I.     BACKGROUND**

**A.  Facts and Procedural History**

Honeywell is a multinational conglomerate that produces a wide range of consumer and industrial products. ECF No. 80, Amended Compl., ¶ 26, ECF No. 22. Defendant Darius Adamczyk at all relevant times was the Company's President and Chief Executive Officer. *Id.* at ¶ 27. Defendant Thomas A. Szlosek served as the Company's Senior Vice President and Chief Financial Officer until his retirement on August 3, 2018. *Id.* at ¶ 28. In 1999, Honeywell acquired Bendix Friction Materials ("Bendix"). *Id.* at ¶ 2. As a result of the Bendix acquisition, Honeywell faced substantial liabilities due to Bendix's use of asbestos in the automobile brakes it manufactured. *Id.* In this putative securities class action, Plaintiffs contend that Honeywell materially understated its Bendix-related asbestos

liabilities and misrepresented its internal controls over financial reporting and public disclosures in violation of §§ 10(b) and 20(a) of the Exchange Act and Rule 10b-5 promulgated thereunder. *See id.* at ¶¶ 1, 132-42.

A more detailed recitation of the factual allegations of this case need not be reiterated here as they are set forth in the Court's May 18, 2020 Opinion denying Defendant's motion to dismiss the amended complaint, the July 21, 2020 Order reopening the Private Securities Litigation Reform Act ("PSLRA") lead-plaintiff selection process, and the December 3, 2020 Opinion granting Iron Workers' motion to serve as co-lead plaintiff and approving appointment of co-lead counsel. *See* ECF Nos. 106, 128, 146.

## B. The Proposed Settlement

After more than three years of litigation, the parties agreed on the terms of a settlement (the "Settlement"). *See* Stipulation of Settlement ("Stipulation"), ECF No. 175; *see also* Settlement Term Sheet attached as Ex. A, ECF No. 172. On December 7, 2021, the parties sought preliminary approval of the Settlement which would resolve all outstanding claims and issues in this case for $10,000,000 ("Settlement Amount") and result in the voluntary dismissal, with prejudice, of this action. The Stipulation defines[1] the Class as:

> All those who purchased the common stock of Honeywell International Inc. during the period from February 9, 2018, through and including October 19, 2018 (the "Class Period"), and were damaged thereby, excluding Defendants, officers and directors of Honeywell, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

Stipulation, ¶ 1.17.

On January 18, 2022, this Court granted preliminary approval of the Settlement, ("Preliminary Approval Order"), finding that it "resulted from arm's-length negotiations between highly experienced counsel and falls within the range of possible approval" and "raises no obvious reasons to doubt its fairness and raises a reasonable basis for presuming that it satisfies the requirements under Fed. R. Civ. P. 23 and due process." Preliminary Approval Order ¶ 2, ECF No. 179. The Court also preliminarily certified the Class for settlement purposes only and approved the proposed Settlement notice documents and notice plan. *Id.* at ¶¶ 3, 6.

A hearing on the final approval of the Settlement (the "Fairness Hearing") was held on May 3, 2022.

---

[1] All capitalized terms not otherwise defined herein are defined in the Stipulation of Settlement.

## C. <u>Notice</u>

As of March 30, 2022,[2] the Postcard Notice approved in the Preliminary Approval Order was mailed or e-mailed to 494,035 potential Class Members. *See* Joseph Mahan Supplemental Decl. ("Mahan Suppl. Decl."), ¶ 4 attached as Ex. A to Kim E. Miller Decl. ("Miller Decl."), ECF No. 182-4; Joseph Mahan Decl. ("Mahan Decl."), ¶ 6 attached as Ex. 1 to Vincent M. Giblin Decl. Regarding Mailing and Publication, ECF No. 180-1.

The Postcard Notice advises of the Settlement and includes a Settlement website (www.honeywellsecuritieslitigation.com) that provides detailed information concerning the Settlement including access to downloadable copies of the Proof of Claim form, Notice of Pendency, the Stipulation, the Preliminary Approval Order, and the Amended Complaint in this Action. *See* Mahan Decl., Ex. A; Mahan Suppl. Decl., ¶ 7. The Postcard Notice also includes a toll-free number, 1-855-604-1686, which was established and maintained to respond to inquiries from Class Members regarding the Settlement. *See* Mahan Suppl. Decl., ¶ 6. Finally, on February 7, 2022, Summary Notice was also published in the *Investor's Business Daily* and over *PR Newswire*. *See* Mahan Decl., ¶ 10, Ex. B.

The deadline for any objections to the Settlement was set for April 4, 2022. Miller Decl., ¶ 39. As of April 26, 2022, 97,825 Proofs of Claim forms were submitted by potential Class Members, but no objections to the Settlement were filed. *See* Mahan April Decl., ¶¶ 18, 19. As of April 26, 2022, eleven requested opt-out from the Settlement. *Id.* at ¶ 16, Ex. A. Of those requests, only one is from a Class Member (Exclusion Request 10), five are from Honeywell investors who did not purchase during the Class Period and thus are not Class Members (Exclusion Requests 3, 5, 6, 7, 11), two are from administrators of the same deceased investor's estate (Exclusion Requests 1, 2), and three are from individuals that did not provide transactional information as required to ascertain whether they are Class Members (Exclusion Requests 4, 8, 9). *Id.* at Ex. A. At the Fairness Hearing, Co-Lead Counsel stated that an additional opt-out request was received on May 2, 2022.

## D. <u>Plan of Allocation</u>

The Plan of Allocation provides for the distribution of $10,000,000 cash Settlement Amount and the interest earned thereon (the gross "Settlement Fund"), less all taxes and approved costs, fees, and expenses (the "Net Settlement Fund") to Members of the Class who submit acceptable Claim Forms ("Authorized Claimants"). *See* Notice of Pendency at 12, attached as Ex. A-1 to Stipulation, ECF No. 175-2. The Net Settlement Fund is to be

---

[2] As of April 26, 2022, over 500,000 Postcard Notices were mailed to potential Class Members. *See* Mahan Decl. of April 26, 2022 ("Mahan April Decl."), ¶ 7 attached as Ex. A to Giblin Decl. in Further Support of Mot. for Final Approval, ECF No. 183-2. Note, however, that the deadline for submitting any objections or exclusion requests was April 4, 2022.

distributed to Authorized Claimants on a *pro rata* basis, calculated according to each Authorized Claimant's recognized loss attributable to the alleged fraud relative to the total of all Authorized Claimants' recognized losses. *Id.*

## II.        DISCUSSION

Plaintiffs' motion to approve settlement asks this Court to: (1) find that the notice of the Settlement given to potential Class Members was adequate; (2) approve the Settlement as fair, reasonable, and adequate; (3) certify the Class under Rule 23 to effectuate the class settlement; and (3) approve the Plan of Allocation for the disbursement of the proceeds among Class Members. Plaintiffs also request an award of attorneys' fees, expenses, and compensatory awards for the lead Plaintiffs. Each issue is addressed in turn.

### A.  **Motion to Approve Settlement**

#### 1.  **Adequacy of Notice**

Before approving the settlement of a class action, the Court must "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Rule 23(c)(2) requires notice of: "(i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." In addition, notice of the settlement must be the best that is "practicable under the circumstances," and "clearly and concisely state in plain, easily understood language." Fed. R. Civ. P. 23(c)(2). The form and manner of the notice must satisfy the requirements of due process. *Shapiro v. Alliance MMA, Inc.*, No. 17-2583, 2018 WL 3158812, at *7 (D.N.J. June 28, 2018). Moreover, any proposed settlement agreement in a securities action that is published or otherwise disseminated to the class must also comply with the requirements of PSLRA, 15 U.S.C. § 78u-4(a)(7).

Here, the notice provided to Class Members satisfies the requirements of Fed. R. Civ. P. 23, the PSLRA, and due process. The notices were provided to Class Members by a third-party claims administration under Co-Lead Counsel's supervision and describe: (1) the nature of the action and the legal and factual bases for the claims, 2) the definition of the certified class, (3) the key terms of the Settlement, including the Settlement Amount, the process for each Class Member to receive a Settlement payment, and the release of claims against Honeywell, (4) the binding nature of the Settlement on each Class Member, and (5) the rights of each Class Member to retain separate legal counsel, object to the Settlement, opt-out of the Class, or appear at the Fairness Hearing, as well as the deadlines by which to do so. *See* Miller Decl. at ¶ 40; Stipulation and attached Exhibits. Such notice "contain[ed] sufficient information to enable class members to make informed decisions

4

on whether they should take steps to protect their rights." *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 180 (3d Cir. 2013).

Likewise, the manner in which Members were notified was the best practicable under the circumstances and also satisfies the requirements of Rule 23 and due process. Potential Class Members were notified by mail, email, and publication in accordance with the Court's Preliminary Approval Order. *See supra,* I.C.

## 2. *Girsh* and *Prudential* Considerations of Settlement

Fed. R. Civ. P. Rule 23(c) requires court approval of any proposed settlement of a class action. A court may, in its discretion, approve a proposed class action settlement "only on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(c); *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions,* ("*Prudential*"), 148 F.3d 283, 299, 316 (3d Cir.1998). The law encourages and favors the settlement of civil actions in federal court, particularly in complex class actions where, as here, the settlement is the result of arm's-length negotiations between experienced counsel after meaningful discovery. *In re Gen. Motors Corp. Pick–Up Truck Fuel Tank Prods. Liab. Litig.,* ("*General Motors*"), 55 F.3d 768, 784 (3d Cir.1995); *see also In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("*Warfarin*"). However, notwithstanding the general presumption in favor of a settlement in the class action context, the Court also "acts as a fiduciary who must serve as a guardian of the rights of absent class members." *General Motors,* 55 F.3d at 785 (citations and quotations omitted).

The Third Circuit has identified nine factors for evaluating a class action settlement: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Girsh v. Jepson,* 531 F.2d 153, 157 (3d Cir.1975).

Beyond these nine *Girsh* factors, additional factors the Court may consider when appropriate and relevant, include: the maturity of the underlying substantive issues; the existence and probable outcome of claims by other classes and subclasses; the comparison between the results achieved by the settlement for individual class or subclass members and the results achieved-or likely to be achieved-for other claimants; whether class or subclass members are accorded the right to opt out of the settlement; whether any provisions for attorneys' fees are reasonable; and whether the procedure for processing individual claims under the settlement is fair and reasonable. *Prudential,* 148 F.3d at 323.[3]

---

[3] Rule 23(e)(2) was amended in 2018 to include a list of factors for courts to consider in evaluating a proposed

"These factors are a guide and the absence of one or more does not automatically render the settlement unfair." *In re Am. Family Enters.*, 256 B.R. 377, 418 (D.N.J. 2000) (quotations omitted). Instead, the Court "must look at all the circumstances of the case and determine whether the settlement is within the range of reasonableness under *Girsh*." *In re Valeant Pharms. Int'l Inc. Sec. Litig.*, No. 15-07658, 2020 WL 3166456, at *7 (D.N.J. June 15, 2020) ("*Valeant*"). The Court addresses each *Girsh* factor, and, where appropriate, *Prudential* factor, in turn.

### i.   The complexity, expense and likely duration of the litigation

Analysis of the first *Girsh* factor "captures the probable costs, in both time and money, of continued litigation." *In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 437 (3d Cir. 2016) ("*NFL Players Litig.*"). Here, the costs, complexity and likely duration of this case strongly favor settlement. "Federal securities class actions by definition involve complicated issues of law and fact." *In re Royal Dutch/Shell Transp. Sec. Litig.*, No. 04-374, 2008 WL 9447623, at *17 (D.N.J. Dec. 9, 2008). This action is even more complex as it involves thorny issues regarding the accounting for asbestos liabilities. In the three years that this case has been pending, the parties have gone through extensive discovery, participated in case management and discovery conferences, and engaged in considerable motion practice. Nonetheless, significant expense and discovery remain, including taking more than a dozen depositions, retaining multiple experts, and producing expert reports on complex issues. The time and expense of a securities class action trial is substantial and would very likely lead to post-trial motions and subsequent appeals that could extend this case for several more years, particularly given the COVID-19 pandemic, which has undeniably slowed the litigation process.

### ii.   The reaction of the class to the settlement

"The second *Girsh* factor 'attempts to gauge whether members of the class support the settlement.'" *Warfarin*, 391 F.3d at 536 (quoting *Prudential*, 148 F.3d at 318). The absence of any objections by Class Members and the small number of opt-outs relative to the apparent size of the Class strongly weigh in favor of approval of the Settlement. *See e.g.*, *NFL Players Litig.* 821 F.3d at 438; *Little-King v. Hayt Hayt & Landau*, No. 11-5621, 2013 WL 4874349, at *21 (D.N.J. Sept. 10, 2013) (collecting cases).

### iii.   The stage of the proceedings and the amount of discovery completed

The third *Girsh* factor "captures the degree of case development that class counsel have accomplished prior to the settlement. Through this lens, courts can determine whether

---

settlement of a class action. The Third Circuit has, however, continued to apply the *Girsh* and *Prudential* factors. *See In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 934 F.3d 316, 329 (3d Cir. 2019). Accordingly, this Court likewise focuses its analysis on the appropriate *Girsh* and *Prudential* factors.

class counsel had an adequate appreciation of the merits of this case before negotiating." *In re Cendant Corp. Litig.,* 264 F.3d 201, 235 (3d Cir. 2001) (quotations omitted). As noted above, this case has been pending and actively litigated before this Court for over three years. By the time the Settlement was reached, the parties had ample opportunity to develop thoughtful and thorough evaluations of the relative strengths and weaknesses of their claims or defenses. This factor undoubtedly favors approval of the Settlement.

### iv.     The risks of establishing liability and damages

Together, the fourth and fifth *Girsh* factors "survey the potential risks and rewards of proceeding to litigation in order to weigh the likelihood of success against the benefit of an immediate settlement." *Warfarin,* 391 F.3d at 537. In other words, the Court must consider "what the potential rewards (or downside) of litigation might have been had class counsel elected to litigate the claims rather than settle them." *General Motors,* 55 F.3d at 814. The Court weighs the value of an immediate guaranteed settlement against the challenges that remain in proceeding with litigation. Even if the class is certified, which Defendants would likely oppose, and Plaintiffs survive a summary judgment motion, there is no guarantee that Plaintiffs would be successful in convincing a jury to hold Honeywell liable. Plaintiffs would need to present expert testimony of expensive financial economic experts using complex methodologies and would face significant risks in trying to prove falsity, materiality, scienter, loss causation, and damages. While Plaintiffs certainly may ultimately succeed in establishing liability and damages at trial, there is no reasonable certainty that such a result is likely. Even assuming a favorable trial outcome, Defendants might appeal, further delaying any benefit to the Class. Accordingly, this factor also weighs in favor of approving the Settlement.

### v.     The risks of maintaining the class action through the trial

The sixth *Girsh* factor "measures the likelihood of obtaining and keeping a class certification if the action were to proceed to trial." *Warfarin*, 391 F.3d at 537 (citations omitted). Plaintiffs expect that Defendants would vigorously oppose class certification, where mixed evidence of price impact could pose substantial challenges to establishing market efficiency under *Halliburton Co. v. Erica P. John Fund, Inc.,* 573 U.S. 258, 283 (2014), and would entail a battle of experts. Hence, since the class has yet to be certified, this factor favors supporting the Settlement.

### vi.     The ability of the defendants to withstand a greater judgment

Neither party has suggested that the Settlement Amount was in any way related to Honeywell's ability to pay. Thus, this factor is not relevant to the Court's analysis.

###### vii.   The range of reasonableness of the settlement fund in light of the best possible recovery and all attendant risks of litigation

The eighth and ninth *Girsh* factors analyze "whether the settlement represents a good value for a weak case or a poor value for a strong case." *Warfarin*, 391 F.3d at 538. "The factors test two sides of the same coin: reasonableness in light of the best possible recovery and reasonableness in light of the risks the parties would face if the case went to trial." *Id.* Here, the Settlement provides a guaranteed recovery of $10 million, which is approximately 12% of the $80.5 million that Plaintiffs, after consulting with their experts, believe is the largest probable recovery if they were to prevail at trial. This figure exceeds the median settlement of class action cases with comparable damages in 2021 (7.4%) and between 2012-2020 (4.9%). Laarni T. Bulan, and Laura E. Simmons, Cornerstone Research, *Securities Class Action Settlements – 2021 Review and Analysis,* at 6,[4] (noting that median settlement for securities class actions in 2021 was $8.3 million). In light of the risks of proceeding with litigation discussed above, and the certainty of the benefits provided by the Settlement, these factors weigh in favor of approving the Settlement.

###### viii.   The *Prudential* Factors

In addition to the *Girsh* factors, the relevant *Prudential* factors favor approving the Settlement. As has already been determined under analysis of the *Girsh* factors, during the three years of active litigation, Plaintiffs have had the chance to make an informed decision about the appropriate settlement value of their claims. Class Members have had ample opportunity to object or opt-out of the Settlement and were provided clear instructions on how to do so. The procedures for processing individual claims are entirely fair and reasonable, requiring only the submission of a Proof of Claim and Release form. *See* Proof of Claim attached as Ex. A-2 to Stipulation, ECF No. 175-3. Finally, as explained in more detail below, the attorneys' fees requested are also fair and reasonable. *See infra* II.B.1.

#### 3. Plan of Allocation

"Approval of a plan of allocation of a settlement fund in a class action is governed by the same standards of review applicable to approval of the settlement as a whole: the distribution plan must be fair, reasonable, and adequate." *In re AremisSoft Corp. Sec. Litig.,* 210 F.R.D. 109, 126 (D.N.J. 2002) (citing *In re Computron, Inc.,* 6 F. Supp. 2d 313, 321 (D.N.J. 1998); *see also In re Cendant Corp. Sec. Litig.,* 109 F. Supp. 2d 235, 264 (D.N.J. 2000), *aff'd sub nom. In re Cendant Corp. Litig.,* 264 F.3d 201 (3d Cir. 2001). "In general, a plan of allocation that reimburses class members based on the type and extent of their injuries is reasonable." *In re Ikon Off. Sols., Inc., Sec. Litig.,* 194 F.R.D. 166, 184 (E.D. Pa. 2000). The present plan, which was developed in consultation with an economic expert, provides for each Authorized Claimant to be reimbursed based on a *pro rata* share of the

---

[4]   Available at: www.cornerstone.com/wp-content/uploads/2022/03/Securities-Class-Action-Settlements-2021-Review-and-Analysis.pdf

Net Settlement Fund based upon each Claimant's recognized loss. The allocation plan is fair, reasonable, and adequate.

### 4. Class Certification

In order to approve a class settlement agreement as fair under Fed. R. Civ. P. 23(c), the Court must additionally determine that the requirements for class certification under Rules 23(a) and (b) are also met. *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 257 (3d Cir. 2009). Each Rule 23 requirement must be established by a preponderance of the evidence. *In re Blood Reagents Antitrust Litig.*, 783 F.3d 183, 187 (3d Cir. 2015). While the class certification analysis may "entail some overlap with the merits of the plaintiff's underlying claim," the court considers merits questions only to the extent they are relevant to performing the "rigorous analysis" required to determine whether the Rule 23 prerequisites are met. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011).

### i.     Rule 23(a) Factors

Rule 23(a) provides that class may be certified if: (1) the class is so numerous that joinder is impracticable ("numerosity"); (2) there are questions of law or fact common to the class ("commonality"); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class ("typicality"); and (4) the representative parties will fairly and adequately protect the interests of the class ("adequacy"). *In re Constar Int'l Inc. Sec. Litig.*, 585 F.3d 774, 780 (3d Cir. 2009) (quoting Fed. R. Civ. P. 23(a)). As discussed below, the Rule 23(a) requirements for class certification are satisfied.

### a. Numerosity

Numerosity is satisfied when joinder of all putative class members is impracticable. Fed. R. Civ. P. 23(a)(1). Where the number of potential plaintiffs exceed forty, the numerosity requirement is generally fulfilled. *Stewart v. Abraham*, 275 F.3d 220, 227 (3d Cir. 2001). Moreover, courts in this Circuit "have recognized a presumption that the numerosity requirement is satisfied when a class action involves a nationally traded security." *Pope v. Navient Corp.*, No. 17-8373, 2021 WL 926611, at *6 (D.N.J. Mar. 11, 2021) (internal quotation and cites omitted). Here, not only does the class action involve nationally traded security, the proposed Class well exceeds forty members as evidenced by the 97,825 Proofs of Claim that have been received. Numerosity is therefore satisfied.

### b. Commonality

Commonality requires that the members of the class must assert a common contention that is capable of classwide resolution such that the "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Mielo v. Steak 'n Shake Operations, Inc.*, 897 F.3d 467, 489–90 (3d Cir. 2018) (quoting *Dukes*, 564 U.S. at 350); *see also Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 597 (3d Cir. 2012) (noting that the "commonality requirement 'does not require identical

claims or facts among class member[s]" (citations omitted)). "[C]ourts in this circuit ... have recognized that securities fraud cases often present a paradigmatic common question of law or fact of whether a company omitted material information or made misrepresentations that inflated the price of its stock." *Bing Li v. Aeterna Zentaris, Inc.*, 324 F.R.D. 331, 339 (D.N.J. 2018) (internal quotation and citation omitted), *aff'd sub nom. Vizirgianakis v. Aeterna Zentaris, Inc.*, 775 F. App'x 51 (3d Cir. 2019).

In this case, as in most securities class actions, the dispute involves common issues relating to alleged violations of federal securities laws, specifically whether Defendants: made misrepresentations and omissions of material fact to the market as a whole, acted with scienter, artificially inflated Honeywell security prices, and damaged the Class. Commonality is thus satisfied.

### c. Typicality

"The concepts of commonality and typicality are broadly defined and tend to merge." *Baby Neal ex rel. Kanter v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994) (citation omitted). "The typicality inquiry centers on whether the interest of the named plaintiffs align with the interests of the absent members." *Stewart*, 275 F.3d at 227 (citation omitted). Thus, the typicality requirement ensures "that the class representatives are sufficiently similar to the rest of the class—in terms of their legal claims, factual circumstances, and stake in the litigation—so that certifying those individuals to represent the class will be fair to the rest of the proposed class." *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 597 (3d Cir. 2009). "Factual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the [absent] class members, and if it is based on the same legal theory." *Stewart*, 275 F.3d at 227–28 (quoting *Hoxworth v. Blinder, Robinson & Co.*, 980 F.2d 912, 923 (3d Cir. 1992)). For the typicality inquiry, a court thus compares "the attributes of the plaintiff, the class as a whole, and the similarity between the plaintiff and the class." *Marcus*, 687 F.3d at 598.

Plaintiffs' claims here are typical because both Plaintiffs and Class Members were injured by the same common course of conduct by Defendants— misrepresentations and omissions regarding Honeywell's Bendix-related asbestos liabilities—and Plaintiffs assert violations of §§ 10(b) and 20(a) of the Exchange Act and Rule 10b-5 promulgated thereunder, just as Class Members would have. *See Pope*, 2021 WL 926611, at *7. Nor is either Plaintiff "subject to a defense that is both inapplicable to many members of the class and likely to become a major focus of the litigation." *In re Schering Plough Corp.*, 589 F.3d at 599. Thus, Plaintiffs stand in precisely the same position as the putative Class Members. Accordingly, Plaintiffs meet the requirements of typicality.

### d. Adequacy

Adequacy "encompasses two distinct inquiries designed to protect the interests of absentee class members." *Prudential*, 148 F.3d at 312. "First, [it] tests the qualifications of the counsel to represent the class." *Id.* "Second, it 'serves to uncover the conflicts of interest between named parties and the class they seek to represent.'" *Id.* (quoting *Amchem*,

521 U.S. at 625).

As this Court has previously noted, both firms selected by Plaintiffs – Kahn Swick & Foti, LLC ("KSF") and Pomerantz LLP ("Pomerantz") are highly experienced. *See* Dec. 17, 2019 Op. at 3, ECF No. 75 ("KS&F is highly experienced and has previously represented classes in asbestos-reserve litigation."); *see also* Dec. 3, 2020 Op. at 4, ECF No. 146 ("Pomerantz has substantial experience litigating class actions brought under the federal securities laws."). KSF and Pomerantz have served as lead counsel in securities class actions in federal courts across the country and have each won substantial recoveries for classes represented by their firms in other securities class actions and complex litigation. *See* ECF Nos. 55-6 (KSF) and 136-2 (Pomerantz). Moreover, both are very familiar with the applicable legal issues, and have devoted considerable resources to advancing the Class's interests. Plaintiffs' counsel are qualified to represent the Class.

Regarding the second prong, there is no conflict of interest between the named parties and the Class. *Amchem*, 521 U.S. 591, 625–26. Plaintiffs, having suffered the same injury as the Class Members, possess the same interest and will adequately represent the interests of the Class. Accordingly, the adequacy requirement is met.

### ii.     Rule 23(b)(3) Factors

Next, in addition to Rule 23(a), class certification requires that a plaintiff also meet one of the requirements set forth in Rule 23(b). Plaintiffs here specifically seek certification of a settlement class under Rule 23(b)(3), which permits certification only if (1) questions of law or fact common to class members predominate over individual questions ("predominance"), and (2) a class action is the superior method for fairly and efficiently adjudicating the controversy ("superiority"). Fed. R. Civ. P. 23(b)(3). To determine predominance and superiority, the Court considers: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 615–16 (1997). As set forth below, the predominance and superiority requirements of Rule 23(b)(3) are satisfied.

### a. Predominance

Predominance requires the court to evaluate whether "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). The inquiry, while similar to the considerations under Rule 23(a)'s commonality requirement, is a "far more demanding" standard that requires the Court to determine if the proposed class is sufficiently cohesive that members of the class may use the same evidence to make a *prima facie* showing of their claims and those claims are subject to class-wide proof. *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016). "[T]he focus of the predominance inquiry is on whether the defendant's

conduct was common as to all of the class members, and whether all of the class members were harmed by the defendant's conduct." *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 298 (3d Cir. 2011); *see also Warfarin*, 391 F.3d at 528 (finding predominance in "broad-based" campaign to deceive providers and patients regarding a generic equivalent). The mere existence of individual questions does not preclude a finding of predominance, nor does the possibility that some individualized inquiry as to damages may be required. *Neale v. Volvo Cars of North America, LLC*, 794 F.3d 353, 371 (3d Cir. 2015). Rather, the Court engages in a qualitative examination of both common and individual issues. *Id.* (citing *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 468 (2013)).

Here, Defendants' alleged omissions or misrepresentations provide the basis for liability as to all potential Class Members. Damages will be calculated on a class-wide basis. Thus, as in many securities fraud class actions, the predominance requirement is "readily met." *Amchem*, 521 U.S. at 625. No individual inquiry will be necessary regarding Defendants' liability to each Class Member. Predominance is satisfied.

### b. Superiority

Finally, to establish superiority, a plaintiff must demonstrate that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). This inquiry requires the Court to "balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication." *Danvers Motor Co. v. Ford Motor Co.*, 543 F.3d 141, 149 (3d Cir. 2008) (citation omitted). Factors relevant to a finding of superiority include:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

Here, many of the putative Class Members are individuals for whom prosecution of a costly individual action for relatively minor damages is not a realistic or efficient alternative. No Class Member has brought a separate claim, which would likely be consolidated into this action anyway. Moreover, with respect to securities fraud claims, without class actions, defrauded investors whose losses do not run into several millions of dollars would have no practical recourse. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) ("most of the plaintiffs would have no realistic day in court if a class action were not available"). Litigating these claims separately would further unduly burden the judicial system. *Warfarin*, 391 F.3d at 534. Fairness and efficiency accordingly weigh in favor of a finding that a class action is the superior method of adjudicating these claims. *See In re Tropicana Orange Juice Mktg. & Sales Practices Litig.*, No. 11-07382, 2019 WL 2521958, at *6 (D.N.J. June 18, 2019). Hence, a class action is the superior method of

adjudication in this matter.

### 5.  Approval of Co-Lead Counsel as Class Counsel

A court that certifies a class must also appoint class counsel whose duty is to fairly and adequately represent the interests of the class. *See* Fed. R. Civ. P. 23(g) and (d). In determining class counsel, the Court must consider: (i) the work undertaken by counsel in identifying or investigating the potential claims; (ii) counsel's experience in handling class actions, other complex litigation, and similar claims; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A). Both firms selected by Plaintiffs – KSF and Pomerantz – have actively advanced the Class's claims, have committed considerable time, resources, and skills to the successful representation of the Class, and as noted earlier, are qualified to fairly and adequately represent the interests of the Class. KSF and Pomerantz are approved as Class Counsel.

### B.  Motion for Attorneys' Fees

Co-Lead Counsel request an award of attorneys' fees of 29.2% of the total recovery of $10,000,000 for a fee of $2,920,000, reimbursement of expenses in the amount of $149,453.67 plus interest, compensatory awards of $10,000 to each of the two lead Plaintiffs, and a limited award of attorneys' fees and reimbursement of litigation expenses for Franciso's terminated counsel Levi & Korsinsky ("L&K").

### 1.  Attorney's Fees for Co-Lead Counsel

Pursuant to Rule 23(h), the Court "may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Although the decision to award attorneys' fees and expenses is within the Court's discretion, the Court must carefully review the negotiated award to ensure that it is fair, reasonable, and adequate. *Little-King*, 2013 WL 4874349, at *18; *see also In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 300 (3d Cir. 2005). In evaluating an award of attorneys' fees, courts typically apply one of two methodologies: (1) the lodestar method in which the number of hours worked by Class Counsel is multiplied by a reasonable hourly billing rate for such services; or (2) the percentage-of-recovery method in which Class Counsel is awarded a certain percentage of the Settlement Amount. *In re AT&T Corp., Sec. Litig.*, 455 F.3d 160, 164 (3d Cir. 2006). Where, as here, the Settlement provides for the payment of attorneys' fees from the same source as the pool of settlement funds available to Class Members, the arrangement "is, for practical purposes, a constructive common fund" that is best analyzed using the percentage-of-recovery methodology. *See Dewy v. Volkswagen AG*, 558 F. App'x 191, 197 (3d Cir. 2014); *see also General Motors*, 55 F.3d at 820-21.

### i.      Percentage of Recovery Analysis

The Third Circuit has identified a number of factors for the Court to consider in determining whether a fee award is reasonable under the percentage-of-recovery analysis: (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases. *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2000). In addition to these seven factors, a court may evaluate these three additional factors: (8) the value of benefits attributable to efforts of class counsel relative to the efforts of other groups, such as government agencies conducting investigations; (9) the percentage fee that would have been negotiated had the case been subject to a private contingent fee arrangement at the time counsel was retained; and (10) any innovative terms of settlement. *In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Prods. Liab. Litig.*, 582 F.3d 524, 541 (3d Cir. 2009).

Several of these factors overlap considerably with those already considered by the Court in approving the Settlement as fair, reasonable, and adequate. For example, the Court has already decided that the duration and complexity of this case (factor 4) were both substantial. *See supra*, II.A.2.i. Similarly, the Court has already noted the lack of any objections to the Settlement (factor 2), notice of which included specific information about the fees and expenses requested by Co-Lead Counsel. *See supra,* II.A.2.ii; Notice of Pendency at 5, 9; *see also Valeant*, 2020 WL 3166456, at *12. Finally, the Court has already analyzed the risk of nonpayment (factor 5) by noting the various risks, including the risk of an unsuccessful trial or appeal, that would render Plaintiffs, and their contingency-fee based counsel unable to recover anything at all. *See supra*, II.A.2.iv.; *In re Merck & Co., Inc. Vytorin ERISA Litig.*, No. 08-CV-285, 2010 WL 547613, at *11 (D.N.J. Feb. 9, 2010) ("*Merck*"). Accordingly, as with the Settlement, each of these factors weighs strongly in favor of approving the request for an award of attorneys' fees and expenses.

The remaining factors also support the award of attorneys' fees and expenses. The first factor supports the requested award because the $10 million Settlement Amount benefits thousands of investors and is all cash.

Likewise, the third factor supports approving the requested fee award. This factor measures the "quality of the result achieved, the difficulties faced, the speed and efficiency of the recovery, the standing, experience and expertise of counsel, the skill and professionalism with which counsel prosecuted the case and the performance and quality of opposing counsel." *Valeant*, 2020 WL 3166456, at *12 (quotations omitted). Here, as already noted, the $10 million Settlement is immediate and substantially benefits the Class particularly in light of the length of this case, the complex issues involved, and the zealous

advocacy on both sides by Plaintiffs' counsel and Defendants' counsel, both highly reputable firms with experience in complex class actions and civil litigation.

The sixth factor weighs in favor of approving the requested fee award. Over the course of this complex litigation, Co-Lead Counsel have devoted a combined 6,129 hours to this case. Miller Decl. ¶ 63. Furthermore, Co-Lead Counsel will likely be expending additional hours and resources assisting Class Members with the claims process.

In evaluating the reasonableness of a requested fee award, the seventh factor requires the Court to compare the requested award to those approved in similar cases. The Third Circuit has found that, in common fund cases such as this one in which the percentage-of-recovery methodology is used, the fees typically awarded to class counsel generally range between 19% to 45% of the settlement fund. *General Motors*, 55 F.3d at 822. Here, the total requested award of fees and expenses of $2,920,000 is exactly 29.2% of the Settlement Amount. Thus, the requested award of attorneys' fees and expenses is well within the reasonable range of awards approved by the Third Circuit and is consistent with similar class action settlements. *Compare In re Ins. Brokerage Antitrust Litig.*, 297 F.R.D. 136, 155 (D.N.J. 2013) (approving fee award equal to 33.33% of $10.5 million settlement); *Merck*, 2010 WL 547613, at *11 (approving fees equal to 33.33% of $41.5 million settlement fund); *Milliron v. T-Mobile USA, Inc.*, No. 08-4149, 2009 WL 3345762, at *14 (D.N.J. Sept. 10, 2009) (approving fees equal to 33.33% of $13.5 million settlement fund). Accordingly, this factor also supports approval of the requested fee award.

The eighth factor also weighs in favor of approving the requested award for attorneys' fees and expenses. The claims in this case were independent of any investigative reports or enforcement actions by any governmental entity. Thus, the value of the Settlement achieved is directly attributable to the efforts of Co-Lead Counsel and supports the reasonableness of the requested fee award. *See Valeant*, 2020 WL 3166456, at *14.

The requested award of fees and expenses relative to the size of the recovery and constructive common fund is also in line with contingent fees that are routinely negotiated in the private marketplace. *Merck*, 2010 WL 547613, at *12 (citing cases). As such, the ninth factor also supports approval of the requested award.

As to the final factor, Plaintiffs have not identified any innovative terms of the Settlement for the Court to consider that weighs in favor of approving the requested award of fees and expenses.

### ii.     Lodestar Cross-Check

Courts in this District are encouraged to "cross-check" the reasonableness of percentage fee awards against the lodestar method. *See Rite Aid Corp. Sec. Litig.*, 396 F.3d at 305-06. Here, the total lodestar amount for Co-Lead Counsel is $3,484,777.50. Miller Decl. ¶ 63. When combined with L&K's requested fee of $243,544.37, *see* discussion *infra*,

the lodestar multiplier is 0.78, which is below the reasonable range approved by the Third Circuit and courts in this District. *See Prudential*, 148 F.3d at 341 ("Multiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied." (quotations omitted)). The requested fee award is thus reasonable when cross-checked under the lodestar method.

### 2. Expenses

In addition to the $2,920,000 fee award, Co-Lead Counsel request payment of $149,453.67 (plus interest earned at the same rate as that earned by the Settlement Fund[5]), which is the sum of all unreimbursed litigation expenses incurred as follows: 1) $93,972.67 by KSF, *see* Miller Decl., ¶ 81; 2) $47,114.15 by Pomerantz, *see* Joshua B. Silverman Decl., ¶ 5 attached as Ex. B to Miller Decl.; 3) $514.80 by Liaison Counsel DeCotiis, Fitzpatrick, Cole & Giblin, *see* Vincent M. Giblin Decl. Regarding Fees and Expenses, ¶ 5 attached as Ex. C to Miller Decl.; and 4) $7,852.05 by L&K, *see* Adam M. Apton Decl. ("Apton Decl."), ¶ 5 attached as Ex. D to Miller Decl. Class Counsel is "entitled to reimbursement of expenses that were adequately documented and reasonably and appropriately incurred in the prosecution of the class action." *In re Safety Components, Inc. Sec. Litig.*, 166 F. Supp. 2d 72, 108 (D.N.J. 2001). Here, Co-Lead Counsel have produced an itemized list of expenditures. Miller Decl., ¶¶ 78, 81. These expenditures, which are for expert or consultants, computer research, and travel, "are the type of expenses routinely charged to hourly paying clients and, therefore, should be reimbursed out of the common fund." *In re Ocean Power Techs., Inc.*, No. 14-3799, 2016 WL 6778218, at *29 (D.N.J. Nov. 15, 2016). Moreover, no objections have been filed to the expense request. Accordingly, Co-Lead Counsel's request for reimbursement of $149,453.67 in expenses plus interest is approved.[6]

### 3. Case Contributions to Representative Plaintiffs

Co-Lead Counsel seek an award of $10,000 for each of the two Co-Lead Plaintiffs – Charles Francisco and Iron Workers. The Court finds the requested case contribution awards to be fair and reasonable. Both Co-Lead Plaintiffs devoted substantial time and effort to prosecuting this litigation including: reviewing pleadings, motions, and other documents; producing discovery documents and responses; communicating with counsel; and staying apprised of developments such as settlement discussions. Accordingly, the Court approves the case contribution awards of $10,000 for each of the two named Class representatives.

---

[5] The Notice of Pendency states that Co-Lead Counsel may seek interest on reimbursement of expenses. Notice of Pendency at 9.

[6] Interest is calculated from the date of the final Opinion and Order rather than from the date of the Fairness Hearing, although here those dates are the same. *See In re Safety Components*, 166 F. Supp. 2d at 109.

### 4. Attorneys' Fees for Terminated Counsel

Finally, Plaintiffs (through Co-Lead Counsel) do not contest L&K's limited fee request of $190,742.53, which is calculated as follows: 1) taking L&K's total lodestar of $243,544.38 (derived from the sum of $197,367.50 for work performed on dates prior to May 12, 2019 plus $46,176.88, which is 50% of $92,353.75 for work performed from May 13, 2019 to August 18, 2019), *see* Apton Decl., ¶¶ 3,4; and 2) applying the same 0.78 multiplier applicable to Co-Lead Counsel to the L&K lodestar. Co-Lead Counsel do not contest L&K fees being awarded from its 29.2% fee request so that overall fees for all counsel are within the fees identified in the notice to Class Members. This limited award sought by L&K is reasonable and is therefore approved.

## III.       CONCLUSION

In sum, the Settlement, which has no objectors, is fair, reasonable, and adequate under Fed. R. Civ. P. 23(c), notice was adequate, and certification of the proposed Class is appropriate under Rules 23(a) and (b). Thus, Plaintiffs' unopposed motion to certify the Class, for approval of Co-Lead Counsel as Class Counsel, and for final approval of the Class Action Settlement is **GRANTED.** Plaintiffs' request for attorneys' fees, expenses, and awards for the lead Plaintiffs is also fair and reasonable, and accordingly, is also **GRANTED.** An appropriate Order follows.

*/s/ William J. Martini*
**WILLIAM J. MARTINI, U.S.D.J.**

**Date: May 3, 2022**